UNITED STATES DISTRICT COURT
SOUTHISN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOSEPH LENTO,

                Plaintiff,                      **COMPLAINT**

    -against-                             ___ cv _____

YONKERS PUBLIC SCHOOLS and
YONKERS BOARD OF EDUCATION,         **JURY TRIAL DEMANDED**

                Defendants.
------------------------------------------------------------x

Plaintiff Joseph Lento, by his attorneys Himmel & Bernstein, LLP, hereby complaining of the defendants Yonkers School District and Yonkers Board of Education as follows:

## I.    INTRODUCTORY STATEMENT

1. Plaintiff Joseph Lento brings this action against defendants for disability discrimination and for retaliation for complaining of and prosecuting claims of disability discrimination in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101, et. seq. (the "ADA"), and the New York State Human Rights Law, NYS Executive Law §290, et seq. (the "NYSHRL").

## II.    THE PARTIES

2. Plaintiff Joseph Lento ("plaintiff" or "Mr. Lento") is a citizen and resident of the State of New York and resides at 17 Northfield Avenue, Dobbs Ferry, New York.

3. Upon information and belief, at all times relevant hiseto the Yonkers Public Schools and the Yonkers Board of Education (collectively "defendants" or "YPS") are municipal corporations organized and existing under the laws of the State of New York maintain a principal place of business at One Larkin Plaza, Yonkers, New York.

4. Upon information and belief, at all relevant times defendants operate the public education system for the city of Yonkers, New York.

### III. JURISDICTION & VENUE

5. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331. Furthis, this court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

6. Venue lies in the United States District Court for the Southisn District of New York in that a substantial part of the events or omissions giving rise to the claim occurred thise within the meaning of 28 U.S.C. § 1391(b)(2) or, alternatively, at least one of the defendants "reside" in the Southisn District of New York within the meaning of 28 U.S.C. § 1391(b)(3).

7. On or about January 14, 2016 plaintiff filed a charge alleging unlawful discrimination on the basis of disability and retaliation against defendants with the U.S. Equal Employment Opportunity Commission ("EEOC") and the NYS Division of Human Rights ("NYSDHR"). That charge has not been resolved by informal means.

8. A Notice of Right to Sue from the EEOC was issued on October 20, 2016, and received by plaintiff on or about October 22, 2016. This Complaint is being filed within 90 days of plaintiff's receipt of the Notice of Right to Sue.

### IV. FACTUAL BACKGROUND

**A. MR. LENTO'S GENERAL EMPLOYMENT HISTORY & ACCOLADES WORKING FOR YONKERS**

9. Mr. Lento began his teaching career in 1984 in the NYC Public Schools System.

10. During his tenure with the NYC Public School System, Mr. Lento was a NYC Teacher of the Year; A Lehman High School Teacher of the Year; the subject of a New York Magazine article and a documented innovator in Special Education.

11. Mr. Lento has spent the majority of his more than 30 years of teaching as a music teacher.

12. Mr. Lento began employment with Yonkers in January 2000.

13. Prior to joining Yonkers Mr. Lento had worked at various other schools in Bronx and Westchester Counties as both a music teacher and administrator.

14. From 2000 to 2001 mr. Lento was the Assistant Principal at Yonkers Museum Middle School.

15. In 2001, Mr. Lento was named the Academic Olympic Coach of Museum Middle School, Yonkers, New York, which took 1st Place in the citywide competition.

16. From 2001 to 2004 Mr. Lento was Instrumental Music Department Chair at the Mark Twain Academy/Montessori School Eleven.

17. In addition to his primary teaching role, Mr. Lento was called upon as a Teacher/Administrative Mentor and Director of the Morning Literacy Program.

18. In March 2002, Mr. Lento was Awarded for having the Best Marching Band Yonkers St. Patrick's Day Parade.

19. In 2002 to 2003, Mr. Lento was selected as the Westchester County All State Band Brass Coach.

20. In 2004 to 2005, Mr. Lento was specifically selected and assigned by Yonkers to the Siragusa International Baccalaureate School. In that assignment Mr. Lento's expertise in curriculum and program development were used to design and implement a music curriculum in alignment with the International Baccalaureate Program standards.

21. During that school year, Yonkers also called upon Mr. Lento to supervise a Student Teaching program at School Nine.

22. In the 2005 to 2006 school year, Mr. Lento was selected by Yonkers Superintendent Bernard Pierorazio to design and implement a Music curriculum for the newly designated Pre K to Grade Eight schools.

23. In addition, Superintendent Pierorzio and Yonkers' Music and Art Supervisor Jerilyne Fierstein appointed Mr. Lento as the Director of the 'River A To Mozart' program.

24. Mr. Lento was also selected as Conductor of the Yonkers All City Elementary/Middle School Band.

25. From 2006 to 2010, Mr. Lento Worked as the Instrumental Music Director for Yonkers' School Seventeen the Westchester Hills Academy and the Pulaski Academy.

26. In December 2007, Mr. Lento became the Joint Instrumental Music Director with Yin-Chu Jou, Director of the United Nations Youth Symphony, to oversee a concert of Roosevelt High School students, and student members of the United Nations Youth Orchestra, held at the historic Tarrytown Music Hall, Tarrytown NY

27. In 2008 and 2009, Mr. Lento was recognized by The Yonkers Partners in Education for his students performing in concerts at the Yonkers Barnes and Nobles Booksellers to raise money for Early Literacy.

28. In January 2009 Mr. Lento's student Mimosa Rraci of Westchester Hills School 29 was selected to attend the Inauguration of President Obama. This was the result of Mr. Lento's work as a Mentor in the National Junior Youth Leadership Council between 2006 and 2012.

29. On June 23, 2009, Mr. Lento was recognized by the Yonkers City Council for his work as an Instrumental Music teacher

30. On February 8th 2010, Yonkers selected Mr. Lento's Instrumental Music program as the only Instrumental Music Student Group at the prestigious Black History Month performance.

31. Prior to 2009 Mr. Lento had no issues with his performance as a highly recognized music teacher or his relationship with Yonkers or its administrators.

**B.   MR. LENTO IS ASSAULTED BY A STUDENT AND IS DISABLED**

32. On September 15, 2009, Mr. Lento was assaulted by a student with severe emotional disorders (the "Assault").

33. As a result of the Assault, Mr. Lento was unable to work for the next two weeks and his health continued to deteriorate thereafter.

34. It was at that point, and points thereafter, that Mr. Lento raised concerns with his Union (the YFT) and Yonkers' administrators about the reasons the student was left unattended.

35. The injuries sustained from the Assault subsequently caused Mr. Lento to be disabled and unable to work from February 23, 2010 through June 2011.

36. Mr. Lento was never disabled prior to the Assault.

37. In particular, Mr. Lento's disabilities, which continue to this day, include sciatica, nerve impingement and radiculopathy at multiple cervical and lumbar levels (the "Disabilities").

38. Mr. Lento sought and was denied Special Consideration Leave from the School because the Disabilities he sustained as a result of the Assault while working for Yonkers.

39. Special Consideration Leave is a contractual benefit given by the superintendent based on fidelity of service; undue hardship; long tenured service and/or unusual circumstances.

40. Starting February 23, 2010 Mr. Lento was forced by Yonkers to exhaust his Sick Bank days through the end of April 2010, and then received paid Sick Leave from the end of April 2010 through June 2010.

41. Mr. Lento should not have had to exhaust his Sick Bank leave because Article 12 (8) of the contract states that in the event of an unusual, severe or serious accident in the performance of regular duty, the employees' sick days shall not be consumed.

42. In or about September 2010 the Yonkers' Chief Medical Officer Alfred Cordero declared Mr. Lento disabled.

**43.** From September 2010 through December 18, 2011 Mr. Lento was placed on unpaid medical leave. This was improper because Mr. Lento fit the criteria for special consideration leave. Indeed, in testimony to OCR the district's chief medical officer admitted that he used arbitrary methods when he decided that Mr. Lento's injuries did not warrant more paid sick leave

44. On or about March 31, 2011, Mr. Lento filed a complaint of retaliation and discrimination with the United States Department of Education, Office of Civil Rights ("OCR") against Yonkers based on not being granted Extended Sick Bank and Special Consideration Leave by Superintendent Pierorazio (the "First Complaint").

45. Under FOIA Mr. Lento discovered that between 2005 and 2011, Mr. Pierorazio had granted 273 other teachers to receive Special Consideration Leave.

46. In June 2011 Mr. Lento was able to return to work. Yonkers intentionally refused and delayed his return to work until December 19, 2011.

47. In or about October 2011, the First Complaint was transferred from OCR to the NYSDHR and the EEOC.

48. On or about December 19, 2011, Yonkers finally allowed Mr. Lento to return to work with agreed upon accommodations that included no pushing, pulling or lifting more than 20 pounds, or writing on a chalkboard (the "Accommodations").

49. Beginning December 19, 2011, Mr. Lento was the Instrumental Music Director at Yonkers' Enrico Fermi School of the Performing Arts and the Scholastic Academy.

50. From Mr. Lento's return to work on December 18th 2011 the district violated and ignored the agreed upon Accommodations thus causing a severe exacerbation of Mr. Lento's Disability on March 8th 2012 causing Mr. Lento to be unable to work until August 30th 2012. During that period of Disability the district refused to give Mr. Lento his contractual 60 days Paid Leave and Sick Bank of Special Consideration Leave.

51. From 2012 to 2016, Mr. Lento was the Music Director for Yonkers' Roosevelt High School Early College Studies.

C. **MR. LENTO FILES A DISABILITY DISCRIMINATION LAWSUIT**

52. In May 2012, Mr. Lento filed a complaint of discrimination and retaliation under the ADA and the NYSHRL against Yonkers in the Southern District of New York, White Plains (the "First Action").

53. In the First Action, Mr. Lento alleged various claims of discrimination and retaliation based on Yonkers' denial of special consideration leave in 2011 and 2012; illegal consumption of sick days; violating the agreed upon accommodations and denial of 60 days paid leave for work related injuries in 2012.

54. On or about November 2013, Mr. Lento settles the First Action with Yonkers for $29,500 payable within 45 days. Yonkers fails to pay Mr. Lento his settlement monies until May 2014.

### D. DESPITE YEARS OF RETALIATORY ABUSE BY YONKERS MR. LENTO CONTINUED HIS SUCCESS AS A MUSIC TEACHER FOLLOWING THE RESOLUTION OF THE FIRST ACTION

55. In December 2012 and December 2013, Mr. Lento is recognized in the Journal News for his work as the Music Director of Roosevelt High School.

56. In June 2014, Mr. Lento was recognized by United States Senator Kristen Gillibrand as a "Maestro."

57. In August 2014, at the request of Randi Weingarten, President of the American Federation of Teachers, she asks Mr. Lento to publish an article for the AFT's online magazine on the importance of an Arts Education.

58. In November 2014, Mr. Lento was named a National Teacher of Arts and Humanities by President Barack Obama. Upon information and belief, no teacher in the history of Yonkers had ever received such an honor prior to Mr. Lento.

59. In November 2014, Mr. Lento was invited by Senator Gillibrand to attend an Arts Grant Workshop at no cost to Yonkers.

60. In January 2015, Mr. Lento was nominated for NYS Teach of the Year.

61. In February 2015, Mr. Lento was selected by the Artistic Director of The Friendship Ambassadors Foundation to provide a student vocal artists to perform at the United Nations World Youth Peace Conference Assembly.

62. In August 2015, Mr. Lento was selected as a Keynote Speaker at the United Nations World Youth Assembly.

63. In May 2015, Mr. Lento received a letter of commendation from US Senator Charles Schumer for his exemplary work with general education and special needs students over his 33-year career.

64. On July 11, 2016 Mr. Lento was interviewed by Verizon FIOS News 1 as a Music Educator/Advocate for special needs, minority and economically challenged students.

65. On July 16, 2016 Mr. Lento received an "invitation only" message from the United Nations to lead a contingent of recent Yonkers graduates to the August 2016 World Youth Assembly

66. On July 18, 2016, Mr. Lento was invited by The Hart Foundation to appear on August 11, 2016 for Manhattan Cablevision as an expert on Music Education and his expertise with developing programs for special needs students.

67. On July 20, 2016, Mr. Lento received a letter of commendation from President George Herbert Walker Bush for his exemplary service as an Educator to the City of Yonkers.

68. On September 1st 2016 Mr. Lento was featured by LMCTV for a "Back To School" special as an expert on Music Education for English language Learners, Special Needs Students, Minority Students and Economically Challenged Students. Mr. Lento was the only teacher in Westchester County selected by LMCTV for this special program.

### E. YONKERS' BEGINS A RETALIATION CAMPAIGN AGAINST MR. LENTO FOLLOWING THE SETTLEMENT OF THE FIRST ACTION

69. As noted above, Yonkers fails to make the settlement payment until more than four (4) months after it was due under the terms of the settlement agreement resolving the First Action.

70. In January 2014 Roberto Scanga, a 29 year-old newly appointed assistant principal at Roosevelt High School with six years previous teaching experience and none as an administrator, begins to regularly monitor (six to seven times per week) Mr. Lento's classes and interrupt his lessons by speaking with Mr. Lento's students during class.

71. In April 2014, Mr. Lento unintentionally missed an after school department meeting. The following day Mr. Lento received a disciplinary notice threatening "escalating disciplinary action" if he missed another meeting.

72. Prior to that notice, Mr. Lento had never had a negative evaluation or disciplinary warning during his tenure.

73. In September 2014, Mr. Lento ordered supplies that were necessary in order for him to properly teach his Instrumental Music classes. The order was intentionally delayed until December 16, 2014 thereby altering Mr. Lento's effectiveness as a teacher and making him susceptible to a performance warning.

74. In November 2014, Yonkers refused to allow Mr. Lento to attend the Arts Grant Workshop he was invited to by Senator Gillibrand, effectively denying Mr. Lento's students much needed resources and attempting to diminish Mr. Lento's reputation in the professional and political arena.

75. In December 2014 both Roosevelt High School's and Yonkers' administration refused to disseminate the message President Obama had for all the students in his letter to Mr. Lento.

76. In January 2015, for unjustified reasons the then Yonkers' Superintendent Mike Yazurlo refused to sign off on Mr. Lento's application to be considered for the New York State Teacher of the Year award despite Mr. Lento's many accomplishments. Mr. Yazurlo's refusal automatically disqualified Mr. Lento from consideration for that prestigious award and was done without any basis. In 2015 Mr. Yazurlo signed that same form for other teachers in the Yonkers Public Schools System.

77. In January 2015, Mr. Lento was not afforded the same opportunity as his peers to apply for an after school position in the Yonkers After School All City Music program.

78. Throughout 2015, Mr. Lento made numerous requests to the district to cover his Music students Raven Morrison and Susanna Stepanyan in their highly prestigious performances at the United Nations. All requests were ignored by Yonkers Public Relations Officer Jerilynne Fierstein.

79. In May 2015, Yonkers denied Mr. Lento payment his $3,700.00 contractual D-1 Stipend in order to harm him financially.

80. In June 2015, Yonkers' would not allow local media to cover Mr. Lento's Spring 2015 Music Concert.

81. In September 2015, Yonkers' again failed to timely fill Mr. Lento's order for supplies for his Instrumental Music classes. This time it took until April 28, 2016 for Mr. Lento to receive his needed supplies.

82. In October 2015, Mr. Lento's Accommodations were again violated by Yonkers as defendant had done following the filing of his First Complaint and First Action. This made at least 14 occasions within the last two years that Mr. Lento's agreed upon Accommodations were violated.

83. This last violation was October 2015. This violation caused Mr. Lento to miss three (3) days of work because he had to use a chalkboard thereby exacerbating his Disabilities.

### F. MR. LENTO FILES ANOTHER CHARGE OF DISCRIMINATION & RETALIATON WITH, OCR, EEOC AND NYSDHR

84. In October 2015, Mr. Lento filed a complaint of discrimination and retaliation with OCR (the "Second Complaint").

85. In December 2015, OCR referred the Second Complaint to the EEOC and the NYSDHR for investigation.

86. The Second Complaint was based upon the above discriminatory and retaliatory allegations including but not limited to failing to provide Mr. Lento with his agreed upon Accommodations.

87. Before the matter was referred to the EEOC and NYSDHR, OCR required Yonkers to enter into a "Resolution Agreement" with it regarding its refusal to timely supply Mr. Lento with his needed supplies to perform his duties. According to the Resolution Agreement the district will remain under monitoring until June of 2017 and all administrators will undergo training in Discrimination, Harassment, and Retaliation.

### G. YONKERS' RETALIATORY ACTIONS CONTINUES EVEN AFTER THE SECOND COMPLAINT

88. Yonkers' campaign of discriminatory and retaliatory abuse and hostility continued unabated following the filing of the Second Complaint.

89. On December 23, 2015, Yonkers' prohibited the Yonkers TV Station WDMC from videotaping Mr. Lento's students' at their Holiday Concert featuring the only Choir of students with Autism in Westchester County High Schools.

90. On January 4, 2016, Mr. Lento sustained another work related injury as the direct result of an adverse employment action.

91. In particular, Mr. Lento was injured by the district by effectively demoting him which required the development of a new curriculum and physical reconfiguration of the room which caused the accident.

92. These new injuries further exacerbated Mr. Lento's Disabilities as well as created new ones.

93. One again Yonkers, improperly required Mr. Lento to utilize his Sick Bank days despite it being a work place injury.

94. Also in January 2016, the Roosevelt High School administration ignored Mr. Lento's instructions on how to administer the Mid Term Examination to his students in an attempt to undermine his effectiveness prior to the work related injury in order to diminish his reputation.

95. In March 2016, Yonkers improperly removed him from payroll for refusing to submit to an unwarranted, biased and illegal medical examination by Yonkers' Chief Medical Officer Dr. Cordero in direct violation of contract and statutory laws. In contrast, following Mr. Lento's first leave of absence after the Assault, Yonkers did not require him to see Dr. Cordero. Yonkers had accepted Mr. Lento's personal doctor's findings of disability.

96. On May 15, 2016 Yonkers once again violated Mr. Lento's contractual rights by refusing to pay him the contractual D-1 Stipend of $3700.00.

97. In June 2016, Yonkers issued Mr. Lento an Annual Professional Performance Review of Incomplete for the 2015-2016 school year.

98. Yonkers' claimed that the reason it issued the Incomplete was because of Mr. Lento's work related disabling injury sustained on January 4, 2014.

99. Before the work related disabling injury of January 4, 2016, Mr. Lento's students performed at the school Pep Rally; seven mini Holiday concerts and one full Holiday concert. Upon information and belief, this number of performances in one semester exceeded the work of Mr. Lento's counterparts held during the same time period.

100. The Assault in 2010 also rendered Mr. Lento unable to complete the school year. Yet, that June of 2011 Mr. Lento's Year End Evaluation contained three (3) highly commendable

ratings with each supervisor making a side note that he was unable to complete the school year due to the work related disability.

101. In May 2016, Yonkers refused to pay Mr. Lento his contractual stipend in the amount of $3,700.00 Ultimately, Yonkers would only pay $1,850.00 of the $3,700.00 Mr. Lento was entitled to.

102. In June 2016, Yonkers would not give Mr. Lento a Highly Qualified end of year evaluation, but instead gave him an "Incomplete" rating.

103. In July 2016, Yonkers' Workers Compensation Attorney made a false statement to the NYS Workers Compensation Administrative Judge by stating Mr. Lento was not eligible for payments through June 24, 2016 through September 1, 2016 because "defendant did not think he deserved it."

104. In sum, Yonkers' retaliatory and discriminatory actions have had a direct impact on Mr. Lento's financial livelihood and professional reputation.

105. Yonkers' actions as described in this complaint constitute an ongoing campaign of harassment, hostility and retaliation that have directly and negatively impacted Mr. Lento's emotional and physical health.

## V.   AS AND FOR THE FIRST CLAIM FOR RELIEF
(Disability Discrimination – ADA)

106. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 105 of this Complaint with the same force and effect as if fully set forth herein.

107. Mr. Lento is qualified for the position he holds as a music teacher.

108. At all relevant times while employed by the Yonkers, Mr. Lento performed his job in a diligent, responsible and competent manner.

109. Mr. Lento has been, and continues to be, disabled by the Disabilities.

110. At all relevant times, the defendants were aware of Mr. Lento's disability.

111. On multiple occasions since 2012, Mr. Lento has requested that Yonkers honor the Accommodations Yonkers agreed to as part of the resolution of the First Action.

112. On multiple occasions since 2012, Mr. Lento requested that Yonkers adhere to the to the existing Accommodations previously been agreed upon.

113. Mr. Lento's Accommodations based on his disabilities were reasonable given that the Yonkers had agreed to them at the time of the First Complaint and First Action.

114. Yonkers discriminated against Mr. Lento based on their failure and/or refusal to provide him with the Accommodations, in violation of the ADA's prohibition against such discriminatory practices in the workplace.

115. Yonkers discriminated against Mr. Lento by creating a hostile work environment due to his disabilities, and/or perceived disabilities, in violation of the ADA's prohibition against such discriminatory practices in the workplace.

116. Since the First Action was settled Yonkers has, as described above, engaged in abusive and malicious treatment of Mr. Lento based on its bias against Mr. Lento due to his Disabilities and need for the Accommodations.

117. Yonkers' words and deeds, as alleged above, created a hostile work environment for Mr. Lento in violation of the ADA as they were ongoing and pervasive and impacted Mr. Lento's health, finances, working conditions and future as an employee.

118. Yonkers, through its executives and administrators discriminated against Mr. Lento by depriving him of the tools needed to perform the essential functions of his job as well as denying him compensation and benefits to which he was otherwise entitled under law and contract.

119.    At all times relevant, Yonkers and its executives and administrators were aware of the prohibition against disability discrimination in the workplace, but nonetheless allowed it to take place.

120.    By virtue of the foregoing, plaintiff has suffered, and continues to suffer, damages due to Yonkers' violation of the ADA in an amount to be determined at trial.

121.    Yonkers' conduct was purposeful, deliberate, intentional and done with reckless disregard of the rights of Mr. Lento.

122.    By virtue of the foregoing, plaintiff is also entitled to recover punitive damages from the Yonkers in an amount to be determined at trial.

### VI.    AS AND FOR THE SECOND CLAIM FOR RELIEF
(Disability Discrimination – NYSHRL)

123.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 122 of this Complaint with the same force and effect as if fully set forth herein.

124.    Defendants discriminated against Mr. Lento by failing to accommodate his disabilities in violation of the NYSHRL's prohibition against such discriminatory practices in the workplace.

125.    Defendants discriminated against Mr. Lento by creating a hostile work environment based on his disabilities, and/or perceived disabilities, in violation of the NYSHRL's prohibition against such discriminatory practices in the workplace.

126.    At all times relevant to this Complaint, Defendants were aware of the prohibitions against discriminating against an employee on the basis of disability, but nonetheless intentionally discriminated against plaintiff on this basis.

127.    By virtue of the foregoing, plaintiff has suffered, and continues to suffer, damages due to defendants' violation of the NYSHRL in an amount to be determined at trial.

## VII.  AS AND FOR A THIRD CLAIM FOR RELIEF
(Retaliation – ADA)

128.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 127 of this Complaint with the same force and effect as if fully set forth herein.

129.  At all relevant times while employed by the Yonkers, Mr. Lento performed his job in a diligent, responsible and competent manner.

130.  Mr. Lento is qualified for the position he holds as a music teacher.

131.  At all relevant times while employed by the Yonkers, Mr. Lento performed his job in a diligent, responsible and competent manner. Mr. Lento complained to the Yonkers administration on numerous occasions about discrimination and retaliation as set forth in detail in this Complaint since the First Action was settled.

132.  Mr. Lento took actions under the NYSHRL and ADA to protect his rights including but not limited to filing the First Action as well as filing charges since the settlement of the First Action with the EEOC, NYSDHR and OCR.

133.  Yonkers' retaliatory actions as described in this Complaint were ongoing, continuous and pervasive throughout the past two (2) years since he settled the First Action.

134.  Yonkers' retaliatory actions as described in this Complaint were ongoing, continuous and pervasive throughout the time since he filed multiple complaints with the EEOC, NYSDHR and OCR.

135.  Mr. Lento suffered a tangible loss of employment benefits as described in detail in this Complaint.

136.  At all relevant times, Yonkers was aware of the prohibitions against retaliating against employees who report and/or stand-up against discrimination in the work place, but nonetheless engaged in such conduct.

137. To date, Mr. Lento continues to suffer, damages due to Yonkers violation of the ADA including loss of income and benefits, and emotional trauma.

138. By virtue of the foregoing, plaintiff has suffered, and continues to suffer, damages due to the Yonkers' violation of the ADA in an amount to be determined at trial.

139. Yonkers' conduct was purposeful, deliberate, intentional and done with reckless disregard of the rights of Mr. Lento.

140. By virtue of the foregoing, plaintiff is also entitled to recover punitive damages from the Yonkers in an amount to be determined at trial.

### VIII.  AS AND FOR THE FOURTH CLAIM FOR RELIEF
(Retaliation – NYSHRL)

141. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 140 of this Complaint with the same force and effect as if fully set forth herein.

142. Defendants retaliated against plaintiff as described in detail above in this Complaint for asserting his lawful rights under the NYSHRL to work in an environment free from disability discrimination.

143. The retaliatory acts on the part of the defendants were taken against plaintiff for resisting, opposing, defying and standing up to the violation of his rights under the NYSHRL.

144. By virtue of the foregoing, plaintiff has suffered, and continues to suffer, damages due to defendants' violation of the NYSHRL in an amount to be determined at trial.

### IX.  AS AND FOR THE FIFTH CLAIM FOR RELIEF
(Breach of Contract)

145. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 144 of this Complaint with the same force and effect as if fully set forth herein.

146. Defendants breached their contractual obligations to pay plaintiff his full stipend, and sick bank pay and to properly credit him for his pension.

147. By virtue of the foregoing, plaintiff is entitled to damages from defendants in an amount to be determined at trial.

## X.   AS AND FOR THE SIXTH CLAIM FOR RELIEF
(Declaratory Relief)

148. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 147 of this Complaint with the same force and effect as if fully set forth hisein.

149. Plaintiff seeks an order of this Court that he was entitled to sick bank for the period March 29th 2016 through June 30th 2016.

150. Plaintiff seeks an order of this Court that he is entitled to the full amount of his 2016 annual stipend in the amount of $3,700.

151. Plaintiff seeks an order of this Court that he is entitled to pension credit and seniority in the district for the periods September 1st 2010 through December 18th 2011; March 8th 2012- September 1st 2012 and March 29th 2016 through September 1st 2016

152. By virtue of the foregoing, plaintiff is entitled to declaratory relief that he is entitled to full payment of his sick bank, pension credit and annual stiped.

**WHISEFORE**, plaintiff demands judgment against the defendants, as applicable:

(1) On the FIRST through FIFTH CLAIMS FOR RELIEF monetary and compensatory damages in an amount to be determined at trial.

(2) On the SIXTH CLAIM FOR RELIEF, a judgment declaring plaintiff is entitled to full payment of his sick bank, pension credit and annual stiped.

(3) On the FIRST and THIRD CLAIMS FOR RELIEF, punitive damages in an amount to be determined at trial.

(4)     On the FIRST through FOURTH CLAIMS FOR RELIEF, attorneys' fees and costs in an amount to be determined at trial.

(5)     On the FIRST through SIXTH CLAIMS FOR RELIEF, such other and additional relief, including equitable relief, as this Court may deem just, appropriate and proper including but not limited to costs and disbursements and interest.

Dated: New York, New York
       November 14, 2016

                                        Respectfully submitted,

                                        Himmel & Bernstein, LLP

                                        By: _____
                                        Tracey S. Bernstein
                                        Attorneys for Plaintiff
                                        928 Broadway, Suite 1000
                                        New York, New York 10010
                                        Ph: (212) 631-0200
                                        Email: tbernstein@hbesq.com