UNITED STATES DISTRICT COURT
SOUTHISN DISTRICT OF NEW YORK
----------------------------------------------------------x
JOSEPH LENTO,

<table>
<tr><td>Plaintiff,</td><td><strong>AMENDED COMPLAINT</strong></td></tr>
<tr><td>-against-</td><td>16 cv 8819 (CS)</td></tr>
<tr><td>YONKERS PUBLIC SCHOOLS and<br>YONKERS BOARD OF EDUCATION,</td><td>JURY TRIAL DEMANDED</td></tr>
<tr><td>Defendants.</td><td></td></tr>
</table>

----------------------------------------------------------x

Plaintiff Joseph Lento, by his attorneys Himmel & Bernstein, LLP, hereby complaining

of the defendants Yonkers Public School and Yonkers Board of Education as follows:

## I.    INTRODUCTORY STATEMENT

1.    Plaintiff Joseph Lento brings this action against defendants Yonkers Public

School and Yonkers Board of Education for disability discrimination and for retaliation for

complaining, and prosecuting claims, of disability discrimination in violation of the Americans

with Disabilities Act of 1990, as amended, 42 U.S.C. §12101, et. seq. (the "ADA"), and the New

York State Human Rights Law, NYS Executive Law §290, et seq. (the "NYSHRL").

## II.    THE PARTIES

2.    Plaintiff Joseph Lento ("plaintiff" or "Mr. Lento") is a citizen and resident of the

State of New York and resides at 17 Northfield Avenue, Dobbs Ferry, New York.

3.    Upon information and belief, at all times relevant herein the Yonkers Public

Schools ("YPS") and the Yonkers Board of Education("BOE") (collectively "defendants," the

"District" or "Yonkers") are municipal corporations organized and existing under the laws of the

State of New York maintain a principal place of business at One Larkin Plaza, Yonkers, New

York.

4.     Upon information and belief, at all relevant times defendants operate the public education system for the city of Yonkers, New York.

### III.     JURISDICTION & VENUE

5.     Jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331.  Further, this court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

6.     Venue lies in the United States District Court for the Southern District of New York in that a substantial part of the events or omissions giving rise to the claim occurred there within the meaning of 28 U.S.C. § 1391(b)(2) or, alternatively, at least one of the defendants "reside" in the Southern District of New York within the meaning of 28 U.S.C. § 1391(b)(3).

7.     In or about December 2015 plaintiff filed a charge alleging unlawful discrimination on the basis of disability and retaliation against defendants with the U.S. Equal Employment Opportunity Commission ("EEOC").  That charge has not been resolved by informal means.

8.     A Notice of Right to Sue from the EEOC was issued on October 20, 2016, and received by plaintiff on or about October 22, 2016.  The original Complaint was filed within 90 days of plaintiff's receipt of the Notice of Right to Sue.

### IV.     FACTUAL BACKGROUND

**A.     MR. LENTO'S GENERAL EMPLOYMENT HISTORY & ACCOLADES WORKING FOR YONKERS**

9.     Mr. Lento began his teaching career in 1984 in the NYC Public Schools System.

10.     During his tenure with the NYC Public School System, Mr. Lento was a NYC Teacher of the Year; A Lehman High School Teacher of the Year; the subject of a New York Magazine article and a documented innovator in Special Education.

11.    Mr. Lento has spent the majority of his more than 30 years of teaching as a music teacher.

12.    Mr. Lento began employment with Yonkers in January 2000.

13.    Prior to joining Yonkers Mr. Lento had worked at various other schools in Bronx and Westchester Counties as both a music teacher and an administrator.

14.    From 2000 to 2001 Mr. Lento was the Assistant Principal at Yonkers Museum Middle School.

15.    In 2001, Mr. Lento was named the Academic Olympic Coach of Museum Middle School which took 1st Place in the citywide competition.

16.    From 2001 to 2004 Mr. Lento was Instrumental Music Department Chair at the Mark Twain Academy/Montessori School Eleven.

17.    In addition to his primary teaching role, Mr. Lento was called upon as a Teacher/Administrative Mentor and Director of the Morning Literacy Program.

18.    In March 2002, Mr. Lento received an award for having the Best Marching Band Yonkers St. Patrick's Day Parade.

19.    In 2002 to 2003, Mr. Lento was selected as the Westchester County All State Band Brass Coach.

20.    In 2004 to 2005, Mr. Lento was specifically selected and assigned by Yonkers to the Siragusa International Baccalaureate School. In that assignment Mr. Lento's expertise in curriculum and program development were used to design and implement a music curriculum in alignment with the International Baccalaureate Program standards.

21.    During that school year, Yonkers also called upon Mr. Lento to supervise a Student Teaching program at School Nine.

22.     In the 2005 to 2006 school year, Mr. Lento was selected by Yonkers Superintendent Bernard Pierorazio to design and implement a Music curriculum for the newly designated Pre K to Grade Eight schools.

23.     In addition, Superintendent Pierorzio and Yonkers' Music and Art Supervisor Jerilyne Fierstein appointed Mr. Lento as the Director of the 'River A To Mozart' program.

24.     Mr. Lento was also selected as Conductor of the Yonkers All City Elementary/Middle School Band.

25.     From 2006 to 2010, Mr. Lento Worked as the Instrumental Music Director for Yonkers' School Seventeen, the Westchester Hills Academy and the Pulaski Academy.

26.     In December 2007, Mr. Lento became the Joint Instrumental Music Director with Yin-Chu Jou, Director of the United Nations Youth Symphony, to oversee a concert of Roosevelt High School students, and student members of the United Nations Youth Orchestra, held at the historic Tarrytown Music Hall, Tarrytown NY

27.     In 2008 and 2009, Mr. Lento was recognized by the Yonkers Partners in Education for his students performing in concerts at the Yonkers Barnes and Nobles Booksellers to raise money for Early Literacy.

28.     In January 2009 Mr. Lento's student Mimosa Raci of Westchester Hills School 29 was selected to attend the Inauguration of President Obama.  This was the result of Mr. Lento's work as a Mentor in the National Junior Youth Leadership Council between 2006 and 2012.

29.     On June 23, 2009, Mr. Lento was recognized by the Yonkers City Council for his work as an Instrumental Music teacher

30.     On February 8th 2010, Yonkers selected Mr. Lento's Instrumental Music program as the only Instrumental Music Student Group at the prestigious Black History Month performance.

31.     Prior to 2009 Mr. Lento had no issues with his performance as a highly recognized music teacher or his relationship with Yonkers or its administrators.

**B.     MR. LENTO IS ASSAULTED BY A STUDENT, DISABLED & PROVIDED WITH AN ACCOMMODATION BY DEFENDANTS**

32.     On September 15, 2009, Mr. Lento was assaulted by a student with severe emotional disorders (the "Assault") while working at Roosevelt High School, where he still works today.

33.     As a result of the Assault, Mr. Lento was unable to work for the next two weeks and his health continued to deteriorate thereafter.

34.     The injuries sustained from the Assault subsequently caused Mr. Lento to be disabled and unable to work from February 23, 2010 through June 2011.

35.     Mr. Lento was never disabled prior to the Assault.

36.     In particular, Mr. Lento's disabilities, which continue to this day, include sciatica, nerve impingement and radiculopathy at multiple cervical and lumbar levels. (collectively, the "Disabilities").

37.     In or about September 2010 the Yonkers' Chief Medical Officer Alfred Cordero declared Mr. Lento disabled.

38.     From September 2010 through December 18, 2011 Mr. Lento was placed on unpaid medical leave.

39.     On or about December 19, 2011, Mr. Lento returned to work.

40. By letter dated September 5, 2012, the accommodations he was provided as result of the Disabilities he suffered due to the Assault were confirmed by the defendants.

41. The accommodations included no pushing, pulling or lifting more than 20 pounds, proctoring exams outside his classroom or writing on a chalkboard (the "Accommodations").

42. The Accommodations are applicable at all relevant times to this lawsuit.

## C.   MR. LENTO FILES A DISABILITY DISCRIMINATION LAWSUIT IN MAY 2012

43. In May 2012, Mr. Lento filed a complaint of discrimination and retaliation under the ADA and the NYSHRL against Defendants in the Southern District of New York, White Plains (the "First Action").

44. In the First Action, Mr. Lento alleged various claims of discrimination and retaliation based on Yonkers' denial of special consideration leave in 2011 and 2012; illegal consumption of sick days; violating the agreed upon Accommodations and denial of 60 days paid leave for work related injuries in 2012.

45. On or about January 21, 2014, Mr. Lento entered into an agreement settling the First Action and releasing all claims that arose prior to that date.

## D.   MR. LENTO CONTINUED HIS SUCCESS AS A MUSIC TEACHER FOLLOWING THE RESOLUTION OF THE FIRST ACTION

46. In June 2014, Mr. Lento was recognized by United States Senator Kristen Gillibrand as a "Maestro."

47. In August 2014, at the request of Randi Weingarten, President of the American Federation of Teachers, Mr. Lento was asked to publish an article for the AFT's online magazine on the importance of an Arts Education.

48.     In November 2014, Mr. Lento was named a National Teacher of Arts and Humanities by President Barack Obama.

49.     In November 2014, Mr. Lento was invited by Senator Gillibrand to attend an Arts Grant Workshop at no cost to Yonkers.

50.     In January 2015, Mr. Lento was nominated for NYS Teach of the Year.

51.     In February 2015, Mr. Lento was selected by the Artistic Director of The Friendship Ambassadors Foundation to provide a student vocal artists to perform at the United Nations World Youth Peace Conference Assembly.

52.     In August 2015, Mr. Lento was selected as a Keynote Speaker at the United Nations World Youth Assembly, and was again asked to provide one of his students as a solo vocal performer for that event.

53.     In October 2015, Mr. Lento was given a Proclamation for Excellence in Education by Yonkers' Mayor Michael Spano.

54.     In May 2016, Mr. Lento received a letter of commendation from US Senator Charles Schumer for his exemplary work with general education and special needs students over his 33-year career.

55.     On July 11, 2016 Mr. Lento was interviewed by Verizon FIOS News 1 as a Music Educator/Advocate for special needs, minority and economically challenged students.

56.     On July 16, 2016 Mr. Lento received an "invitation only" message from the United Nations to lead a contingent of recent Yonkers graduates to the August 2016 World Youth Assembly

57.     On July 18, 2016, Mr. Lento was invited by The Hart Foundation to appear on August 11, 2016 for Manhattan Cablevision as an expert on Music Education and his expertise with developing programs for special needs students.

58.     On July 20, 2016, Mr. Lento received a letter of commendation from President George Herbert Walker Bush for his exemplary service as an educator to the City of Yonkers.

59.     On September 1st 2016 Mr. Lento was featured by LMCTV for a "Back To School" special as an expert on Music Education for English language Learners, Special Needs Students, Minority Students and Economically Challenged Students. Mr. Lento was the only teacher in Westchester County selected by LMCTV for this special program.

60.     On October 18, 2016 Mr. Lento received a letter from President George W. Bush for his work in Education.

## E.     YONKERS' BEGINS A RETALIATION CAMPAIGN AGAINST MR. LENTO FOLLOWING THE SETTLEMENT OF THE FIRST ACTION

61.     Yonkers fails to make the settlement payment until after it was due under the terms of the settlement agreement resolving the First Action.

62.     Starting in January 2014 Roberto Scanga, a 29 year-old newly appointed assistant principal at Roosevelt High School with just six years previous teaching experience, and no experience as an administrator, begins to regularly monitor (six to seven times per week) Mr. Lento's classes and interrupt his lessons by speaking with Mr. Lento's students during class.

63.     In April 2014, Mr. Lento unintentionally missed an after school department meeting. The following day Mr. Lento received a disciplinary notice from Mr. Scanga threatening "escalating disciplinary action" if he missed another meeting.

64.     Prior to that notice, Mr. Lento had never had a negative evaluation or disciplinary warning during his tenure.

65. In September 2014, Mr. Lento ordered supplies that were necessary in order for him to properly teach his Instrumental Music classes. The order was intentionally delayed until December 16, 2014 thereby altering Mr. Lento's effectiveness as a teacher and making him susceptible to a performance warning.

66. Upon information and belief, other similarly situated music teachers in the school district received their supplies in a timely fashion at the beginning of the 2014/2015 school year.

67. In November 2014, Yonkers refused to allow Mr. Lento to attend the Arts Grant Workshop he was invited to by Senator Gillibrand, diminishing Mr. Lento's reputation in the professional and political arena.

68. In December 2014 both Roosevelt High School's and Yonkers' administration refused to disseminate the message President Obama had for all the students in his letter to Mr. Lento.

69. In January 2015, for unjustified reasons the then Yonkers' Superintendent Mike Yazurlo refused to sign off on Mr. Lento's application to be considered for the very prestigous New York State Teacher of the Year ("NYSTOY") award despite Mr. Lento's many accomplishments.

70. Mr. Yazurlo's refusal automatically disqualified Mr. Lento from consideration for this prestigious award, was done without any reasonable or justifiable basis, and cost Mr. Lento opportunities for professional growth and financial reward, including but not limited to, appearances as a guest speaker in school districts throughout New York State and future paid opportunities as a lecturer, consultant, and district, state and/or national level administrator in education.

71. Upon information and belief, in 2015 Mr. Yazurlo signed NYSTOY award form for other teachers in the District.

72. In January 2015, Mr. Lento was not afforded the same opportunity as similarly situated music teachers to apply for an after school position in the Yonkers After School All City Music program.

73. Throughout 2015, Mr. Lento made numerous requests to the district to cover his Music students Raven Morrison and Susanna Stepanyan in their highly prestigious performances at the United Nations. All requests were ignored by Yonkers Public Relations Officer Jerilynne Fierstein.

74. As a high school instrumental music teacher, Mr. Lento was contractually entitled to a $3,700 D-1 stipend from the defendants.

75. Mr. Lento received this $3,700 payment throughout the First Action.

76. In May 2015, Interim Superintendent Quezada intentionally withheld this $3,700.00 contractual D-1 by falsely claiming Mr. Lento did not teach instrumental music.

77. Upon information and belief, the other high school instrumental music teachers in the District timely received their $3,700 D-1 stipend.

78. In June 2015, Yonkers' would not allow local media to cover Mr. Lento's Spring 2015 Music Concert.

79. In September 2015, Yonkers' again failed to timely fill Mr. Lento's order for supplies for his instrumental music classes. This time it took until April 28, 2016 for Mr. Lento to receive his needed supplies.

80. As with the 2014/2015 school year, other similarly situated music teachers in the school district received their supplies in a timely fashion at the beginning of the 2015/2016 school year.

81. In September 2015, following his report of Mr. Quezada for making racially insensitive remarks Mr. DeChent told Mr. Lento he would receive the $3,700 D-1 stipend as it was all just a mistake.

82. Mr. Lento was so upset by the withholding of his D-1 stipend that he developed shingles in June 2015.

83. As a result Mr. Lento suffers from post herpetic neuropathy due to the stress induced shingles suffered in June 2015.

**F.   DEFENDANTS' FAIL TO PROVIDE THE AGREED UPON ACCOMMODATIONS & MR. LENTO COMPLAINS TO DEFENDANTS**

84. One of the Accommodations that were granted to Mr. Lento was that he would not have to proctor an exam outside of his classroom or write on a chalkboard.

85. Since January 21, 2014 release, defendants have violated Mr. Lento's Accommodations on at least 10 occasions by having him proctor regents and PSAT exams outside his classroom, and write on the chalkboard without supplying him, as agreed, with either with a smartboard or an overhead projector.

86. On several occasions in or about June 2014, October 2014, February 2015 and June 2015, Mr. Lento verbally complained to defendants' administrators about the ongoing violations of his Accommodation rights by asking him to proctor regents and PSAT exams.

87. The last violation of his Accommodation occurred on October 13, 2015 when he was directed to proctor the PSAT exam.

88.     This violation caused Mr. Lento to miss three (3) days of work because he had to use a chalkboard, thereby exacerbating his Disabilities.

89.     By email dated October 18, 2015, to Principal Ed DeChent, Assistant Principals Robert Scanga, Sony Grandoit, Matel Hassan and Frank Magrino, Mr. Lento complained about the failure of the defendants to provide the agreed upon Accommodations during the October 13, 2015 PSAT exam, pointed out that there had been numerous violations going back to 2014, and raising his concern that defendants were acting in a discriminatory and retaliatory fashion.

90.     By faxed letter dated December 3, 2015 to the Acting Commissioner of Human Resources Carlos Moran, and Human Resource Administrator Ted von Hoene, Mr. Lento listed out his issues of discrimination, retaliation, and violation of his Accommodations since he settled his prior litigation on January 21, 2014.

91.     By email dated January 4, 2016, Mr. Lento forwarded his October 18, 2015 email to Mr. DeChent to Mr. von Hoene seeking assistance as his October 18, 2015 email had been ignored.

92.     Mr. Lento's emails and faxed letter to senior members of defendants' administration were never responded to by defendants.

## G.     MR. LENTO ALSO FILES A CHARGE OF DISCRIMINATION & RETALIATON WITH OCR, THE EEOC AND THE NYSDHR

93.     In October 2015, Mr. Lento filed a complaint of discrimination and retaliation with the U.S. Department of Education, New York Office of Civil Rights (the "OCR Complaint").

94.     The OCR Complaint was based upon the above discriminatory and retaliatory allegations including but not limited to failing to provide Mr. Lento with his agreed upon Accommodations.

95.     In December 2015, OCR referred the OCR Complaint to the US Equal Employment Opportunity Commission ("EEOC") for investigation.

96.     On or about January 14, 2016, Mr. Lento filed a Verified Complaint with the New York State Division of Human Rights ("NYSDHR") at the direction of the EEOC as he was told by the EEOC that it was the same as filing with the EEOC, that the NYSDHR would move more quickly to investigate the matter on behalf of the EEOC and that all the same rights and remedies would be available to him there.

97.     On April 1, 2016, defendants entered into a "Resolution Agreement" with OCR regarding their refusal to timely supply Mr. Lento with the supplies he needed to perform his duties and possible retaliation. According to the Resolution Agreement the district will remain under monitoring until June 2017 and all administrators will undergo training in discrimination, harassment, and retaliation.

## H.     YONKERS' RETALIATORY ACTIONS CONTINUES AFTER THE VARIOUS COMPLAINTS

98.     Yonkers' campaign of discriminatory and retaliatory abuse and hostility continued unabated following the filing of Mr. Lento's complaints of discrimination and retaliation with the District, OCR, the EEOC and the NYSDHR.

99.     On December 23, 2015, Yonkers' prohibited the Yonkers TV Station WDMC from videotaping Mr. Lento's students at their Holiday Concert featuring the only Choir of students with Autism in Westchester County High Schools.

100.     On January 4, 2016, Mr. Lento sustained another work related injury as the direct result of an adverse employment action whereby he was demoted from Instrumental Music Director exacerbating the severe stress he was under due to the ongoing retaliatory actions of defendants.

101.    The demotion required the development of a new curriculum and physical reconfiguration of the room which also caused exacerbations of Mr. Lento's Disabilities as well as created new ones.

102.    Yonkers improperly required Mr. Lento to utilize his Sick Bank days despite it being a work place injury.

103.    In March 2016, defendants improperly removed Mr. Lento from payroll after defendants refused his reasonable request for a doctor, other than Chief Medical Officer Dr. Cordero, to examine him regarding his request for disability leave and sick bank given Mr. Lento had filed a complaint against Dr. Cordero for not providing his medical records to him upon request and was concerned that Dr. Cordero would not be impartial.

104.    In May 2016, both the NYS Independent Medical Examiner and the NYS Workers' Compensation Judge found Mr. Lento to be suffering from a work related disability as of January 4, 2016.

105.    On May 15, 2016 Yonkers once again violated Mr. Lento's contractual rights by refusing to pay him the contractual D-1 Stipend of $3,700.00.

106.    Ultimately, Yonkers paid $1,850.00 of the $3,700.00 Mr. Lento was entitled to.

107.    Mr. Lento accepted this lesser sum because he had no income do to defendants taking him off payroll in March 2016.

108.    Upon information and belief, Mr. Lento's similarly situated instrumental music colleagues in the District received the full amount of their D-1 stipend.

109.    In June 2016, Yonkers issued Mr. Lento an Annual Professional Performance Review of Incomplete for the 2015-2016 school year.

110.    The Assault in 2010 also rendered Mr. Lento unable to complete the school year. Yet, in June 2011 Mr. Lento's Year End Evaluation contained three (3) highly commendable ratings with each supervisor making a side note that he was unable to complete the school year due to the work related disability.

111.    Yonkers' claimed that the reason it issued the incomplete was because of Mr. Lento's work related disabling injury sustained on January 4, 2014.

112.    Before the work related disabling injury of January 4, 2016, Mr. Lento's students performed at the school Pep Rally, seven mini Holiday concerts and one full Holiday concert. Upon information and belief, this number of performances in one semester exceeded the work of Mr. Lento's similarly situated music teacher counterparts held during the same time period.

113.    In July 2016, Yonkers' Workers Compensation Attorney told the NYS Workers Compensation Administrative Judge that Mr. Lento was not eligible for payments through June 24, 2016 through September 1, 2016 because "defendant did not think he deserved it."

114.    Yonkers' retaliatory and discriminatory actions have had a direct impact on Mr. Lento's financial livelihood and professional reputation.

115.    Yonkers' actions since January 21, 2014 as described in this complaint and the various identified emails and administrative filings which are incorporated herein by reference, constitute an ongoing campaign of harassment, hostility and retaliation that have directly and negatively impacted Mr. Lento's emotional, physical, financial and future professional well-being.

## V.    AS AND FOR THE FIRST CLAIM FOR RELIEF
(Disability Discrimination – ADA)

116.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 115 of this Complaint with the same force and effect as if fully set forth herein.

117.   At all relevant times, Mr. Lento was qualified for the position he holds as a music teacher.

118.   At all relevant times while employed by the Yonkers, Mr. Lento performed his job in a diligent, responsible and competent manner.

119.   Mr. Lento has been, and continues to be, disabled by the Disabilities.

120.   At all relevant times, the defendants were aware of Mr. Lento's Disabilities including the new ones sustained in January 2016.

121.   On multiple occasions since January 21, 2014, Mr. Lento has requested that Yonkers honor the Accommodations Yonkers orally agreed to at the time his Disabilities arose and confirmed in writing in September 5, 2012.

122.   On multiple occasions since January 21, 2014, Mr. Lento requested that Yonkers adhere to the to the existing Accommodations previously been agreed upon in September 2012.

123.   Mr. Lento's Accommodations based on his Disabilities were reasonable given that the Yonkers had agreed to them in September 2012 and have never claimed that they were changed or eliminated.

124.   Yonkers discriminated against Mr. Lento based on their failure and/or refusal to provide him with the Accommodations, in violation of the ADA's prohibition against such discriminatory practices in the workplace.

125.   Yonkers discriminated against Mr. Lento by creating a hostile work environment due to his disabilities, and/or perceived disabilities, in violation of the ADA's prohibition against such discriminatory practices in the workplace.

126.    Since the First Action was settled Yonkers has, as described above, engaged in abusive and malicious treatment of Mr. Lento based on its bias against Mr. Lento due to his Disabilities and need for the Accommodations.

127.    Yonkers' words and deeds, as alleged above, created a hostile work environment for Mr. Lento in violation of the ADA as they were ongoing and pervasive and negatively impacted Mr. Lento's health, finances, working conditions and professional endeavors.

128.    Yonkers, through its executives and administrators discriminated against Mr. Lento by depriving him of the tools needed to perform the essential functions of his job as well as denying him compensation and benefits to which he was otherwise entitled under law and contract.

129.    At all times relevant, Yonkers and its executives and administrators were aware of the prohibition against disability discrimination in the workplace, but nonetheless allowed it to take place.

130.    By virtue of the foregoing, plaintiff has suffered, and continues to suffer, damages due to Yonkers' violation of the ADA in an amount to be determined at trial.

131.    Yonkers' conduct was purposeful, deliberate, intentional and done with reckless disregard of the rights of Mr. Lento.

132.    By virtue of the foregoing, plaintiff is also entitled to recover punitive damages from the Yonkers in an amount to be determined at trial.

## VI.    AS AND FOR THE SECOND CLAIM FOR RELIEF
### (Disability Discrimination – NYSHRL)

133.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 132 of this Complaint with the same force and effect as if fully set forth herein.

134.    Defendants discriminated against Mr. Lento by failing to accommodate his disabilities in violation of the NYSHRL's prohibition against such discriminatory practices in the workplace.

135.    Defendants discriminated against Mr. Lento by creating a hostile work environment based on his disabilities, and/or perceived disabilities, in violation of the NYSHRL's prohibition against such discriminatory practices in the workplace.

136.    At all times relevant to this Complaint, defendants were aware of the prohibitions against discriminating against an employee on the basis of disability, but nonetheless intentionally discriminated against plaintiff on this basis.

137.    By virtue of the foregoing, plaintiff has suffered, and continues to suffer, damages due to defendants' violation of the NYSHRL in an amount to be determined at trial.

## VII.    AS AND FOR A THIRD CLAIM FOR RELIEF
### (Retaliation – ADA)

138.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 137 of this Complaint with the same force and effect as if fully set forth herein.

139.    At all relevant times while employed by the Yonkers, Mr. Lento performed his job in a diligent, responsible and competent manner.

140.    Mr. Lento is qualified for the position he holds as a music teacher.

141.    At all relevant times while employed by the Yonkers, Mr. Lento performed his job in a diligent, responsible and competent manner. Mr. Lento complained to the Yonkers administration on numerous occasions about discrimination and retaliation as set forth in detail in this Complaint since the First Action was settled on January 21, 2014.

142.    Mr. Lento took actions under the NYSHRL and ADA to protect his rights including but not limited filing verbal and written complaints with defendants' senior

administrators and executives as well as filing administrative charges with the EEOC, the NYSDHR and OCR.

143.    Yonkers' retaliatory actions as described in this Complaint were ongoing, continuous and pervasive throughout the past two (2) years since he settled the First Action.

144.    Yonkers' retaliatory actions as described in this Complaint were ongoing, continuous and pervasive throughout the time since he filed complaints with the District, the EEOC, the NYSDHR and OCR as well as internal complaints with defendants' senior administrators and executives.

145.    Mr. Lento suffered a tangible loss of employment benefits as described in detail in this Complaint.

146.    At all relevant times, Yonkers was aware of the prohibitions against retaliating against employees who report and/or stand-up against discrimination in the work place, but nonetheless engaged in such conduct.

147.    To date, Mr. Lento continues to suffer, damages due to Yonkers violation of the ADA including loss of income and benefits, and emotional trauma.

148.    By virtue of the foregoing, plaintiff has suffered, and continues to suffer, damages due to the Yonkers' violation of the ADA in an amount to be determined at trial.

149.    Yonkers' conduct was purposeful, deliberate, intentional and done with reckless disregard of the rights of Mr. Lento.

150.    By virtue of the foregoing, plaintiff is also entitled to recover punitive damages from the Yonkers in an amount to be determined at trial.

### VIII.   AS AND FOR THE FOURTH CLAIM FOR RELIEF
(Retaliation – NYSHRL)

151.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 150 of this Complaint with the same force and effect as if fully set forth herein.

152.    Defendants retaliated against plaintiff as described in detail above in this Complaint for asserting his lawful rights under the NYSHRL to work in an environment free from disability discrimination.

153.    The retaliatory acts on the part of the defendants were taken against plaintiff for resisting, opposing, defying and standing up to the violation of his rights under the NYSHRL.

154.    By virtue of the foregoing, plaintiff has suffered, and continues to suffer, damages due to defendants' violation of the NYSHRL in an amount to be determined at trial.

## IX.    AS AND FOR THE FIFTH CLAIM FOR RELIEF
(Breach of Contract)

155.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 154 of this Complaint with the same force and effect as if fully set forth herein.

156.    Defendants breached their contractual obligations to pay plaintiff his full D-1 stipend in 2016.

157.    Defendants breached their contractual obligations to pay plaintiff sick bank pay and to properly credit him for his pension for the period March 29, 2016 to June 30, 2016.

158.    By virtue of the foregoing, plaintiff is entitled to damages from defendants in an amount to be determined at trial.

## X.    AS AND FOR THE SIXTH CLAIM FOR RELIEF
(Declaratory Relief)

159.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 158 of this Complaint with the same force and effect as if fully set forth hisein.

160.    Plaintiff seeks an order of this Court that he was entitled to sick bank for the period March 29, 2016 through June 30, 2016.

161.    Plaintiff seeks an order of this Court that he is entitled to the full amount of his 2016 D-1 stipend in the amount of $3,700.

162.    Plaintiff seeks an order of this Court that he is entitled to pension and seniority credit for the period March 29, 2016 through September 1, 2016.

163.    By virtue of the foregoing, plaintiff is entitled to declaratory relief that he is entitled to full payment of his sick bank for the period March 29, 2016 to September 1, 2016, pension and seniority credit for that same period and full payment of his D-1 stipend.

**WHISEFORE**, plaintiff demands judgment against the defendants, as applicable:

(1)    On the FIRST through FIFTH CLAIMS FOR RELIEF monetary and compensatory damages in an amount to be determined at trial.

(2)    On the SIXTH CLAIM FOR RELIEF, a judgment declaring plaintiff is entitled to full payment of his sick bank and pension credit for the period March 29, 2016 through June 30, 2016, and his annual D-1 stipend.

(3)    On the FIRST and THIRD CLAIMS FOR RELIEF, punitive damages in an amount to be determined at trial.

(4)    On the FIRST through FOURTH CLAIMS FOR RELIEF, attorneys' fees and costs in an amount to be determined at trial.

(5)    On the FIRST through SIXTH CLAIMS FOR RELIEF, such other and additional relief, including equitable relief, as this Court may deem just, appropriate and proper including but not limited to costs and disbursements and interest.

Dated: New York, New York
        February 24, 2017

Respectfully submitted,

Himmel & Bernstein, LLP

By: _____
      Tracey S. Bernstein
Attorneys for Plaintiff
928 Broadway, Suite 1000
New York, New York 10010
Ph: (212) 631-0200
Email: tbernstein@hbesq.com

To:

Traub Lieberman Strauss
      & Shrewsbury, LLP
Seven Skyline Drive
Hawthorne, NY 10532